**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Courtney Bernard Clark, | Case No. 13-cv-2849 (MJD/HB) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Commissioner Tom Roy, Officer Nate Drevlow, Dr. Lisa Staber, Dr. Steven Klapmeier, and Dr. James Wischer,[1] | |
| Defendants. | |

Courtney Bernard Clark, MCF-Oak Park Heights, 5329 Osgood Avenue North, Stillwater, MN 55082, pro se.

Margaret E. Jacot, Minnesota Attorney General's Office, 445 Minnesota Street, Suite 900, Saint Paul, MN 55101, for Commissioner Tom Roy and Officer Nate Drevlow; Andrea Pavelka Hoversten, Geraghty, O'Loughlin & Kenney, PA, 55 East Fifth Street, Suite 1100, Saint Paul, MN 55101, for Dr. Lisa Staber and Dr. Steven Klapmeier; James S. McAlpine and Steven R. Schwegman, Quinlivan & Hughes, PA, P.O. Box 1008, Saint Cloud, MN 56302, for Dr. James Wichser.

HILDY BOWBEER, United States Magistrate Judge

## I.    INTRODUCTION

This matter is before the Court on Defendants Commissioner Tom Roy and

Officer Nate Drevlow's Motion for Judgment on the Pleadings [Doc. No. 17]; Defendants

Dr. Steven Klapmeier and Dr. Lisa Staber's Motion to Dismiss [Doc. No. 36]; Defendant

---

[1]  Plaintiff misspelled Dr. James Wichser's name as "Wischer."  Henceforth, the Court will use the correct spelling of Dr. Wichser's name.

Dr. James Wichser's Motion to Dismiss [Doc. No. 40]; Plaintiff Courtney Bernard

Clark's Motion for Legal Assistance [Doc. No. 57]; and Plaintiff Courtney Bernard

Clark's Motion for Subpoena [Doc. No. 58].  The motions were referred to the

undersigned United States Magistrate Judge for the issuance of a Report and

Recommendation under 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, the

Court recommends granting Defendants' motions and denying Plaintiff's motions.

## II.   BACKGROUND

Plaintiff was an inmate at the Minnesota Correctional Facility in Faribault,

Minnesota ("Faribault Facility").[2]  (Am. Compl. at 3 [Doc. No. 7].)  Defendant Tom Roy

is the Commissioner of the Minnesota Department of Corrections.  (*Id.* at 4.)  Defendant

Nate Drevlow is a corrections officer at the Faribault Facility and an employee of the

Minnesota Department of Corrections.  (*Id.*; Answer ¶ 4 [Doc. No. 13].)  Defendants Lisa

Staber, Steven Klapmeier, and James Wichser are doctors who allegedly provided care to

Plaintiff.  (Am. Compl. at 4-8.)  They are not employees of the Minnesota Department of

Corrections.  (Answer ¶ 4.)

Plaintiff first filed suit for violation of civil rights under 42 U.S.C. § 1983 on

October 24, 2013.  (Compl. [Doc. No. 1].)  On October 29, 2013, the Court found the

original complaint to be deficient because it did not mention the Constitution or identify

specific constitutional rights that any of the Defendants allegedly violated.  (Order at 2,

Oct. 29, 2013 [Doc. No. 5].)  Plaintiff was directed to file an amended complaint that

---

[2]  The Court understands that Plaintiff is now located at the Minnesota Correctional
Facility in Stillwater, Minnesota.  (Notice Change Address [Doc. No. 47].)

"clearly describe[s] what, specifically, each individual named Defendant actually did (or failed to do) that allegedly violated Plaintiff's federal constitutional rights," and identifies "the specific constitutional or other legal basis for his claims against each named Defendant." (*Id.* at 4.) On December 2, 2013, Plaintiff filed his Amended Complaint for a violation of civil rights under 42 U.S.C. § 1983.

The Amended Complaint alleges the following facts. On April 26, 2013, Plaintiff was scheduled to leave the Faribault Facility to attend an off-site neurology appointment. (*Id.* at 4.) Drevlow arrived to transport Plaintiff across the Faribault Facility grounds in a wheelchair. (*Id.*) Plaintiff claims that he warned Drevlow about potholes in their path, but nonetheless they hit one and Plaintiff fell from his wheelchair. (*Id.* at 7.) Drevlow called for medical assistance, and medical staff arrived. (*Id.*) After consulting with the medical staff, Plaintiff attended his off-site appointment. (*Id.*) Upon returning to the Faribault Facility, Plaintiff reported the pain and discomfort he was experiencing, and in turn received "a plastic bag supply for ice for a year." (*Id.*) Subsequently, Plaintiff "was started on some medicine called Ultram," and he did not receive further pain medication. (*Id.* at 8.)

Plaintiff claims that Roy failed to keep him safe from the potholes. (*Id.* at 4.) Plaintiff challenges Roy's alleged failure to train correction officers on pushing wheelchairs safely, and to maintain the roads on which the wheelchairs travel. (*Id.* at 4-5.) Additionally, Plaintiff alleges that Roy "was called by my family," who were "hung up on" and transferred to the Department of Corrections' Head Nurse Office. (*Id.* at 8.)

With respect to Dr. Staber and Dr. Klapmeier, Plaintiff claims that "Dr. Lisa

3

Staber refuse[d] to treat my injuries or Dr. Steven Klapmeier who both handle my

treatment plan together.  So I am still suffering with no pain medicine or orders to see a

specialist." (*Id.* at 5.)

   The medical records attached to the Amended Complaint do not involve or refer to

Dr. Staber.  They do, however, include notes by Dr. Klapmeier, who appears to have

examined Plaintiff on May 2, 2013; July 30, 2013; August 14, 2013; September 10, 2013;

and October 2, 2013.[3]  (Am. Compl. Ex. [Doc. No. 7-1].)  The notes reflect that on May

2, 2013, Plaintiff reported falling from his wheelchair six days earlier, which resulted in a

tight and burning sensation in his right hip and lower back.[4]  (*Id.* at 5.)  For his pain,

Plaintiff was prescribed Ultram for the next twenty-one days, and put on a regimen of ice

and warm compresses.  (*Id.*)  The medical staff discussed the physiology of a muscle

strain with Plaintiff, and planned to "rule out any sort of a fracture with a right hip x-ray"

the following Tuesday.  (*Id.*)  At his subsequent visits with Dr. Klapmeier, Plaintiff

---

[3]  A court may consider the complaint, matters of public record, orders, materials
embraced by the complaint, and exhibits attached to the complaint in deciding a motion
to dismiss under Rule 12(b)(6).  *Porous Media Corp. v. Pall Corp.,* 186 F.3d 1077, 1079
(8th Cir. 1999).  In light of Plaintiff's allegations relating to his medical treatment, the
Court will consider the medical records attached to the Amended Complaint as
necessarily embraced by the pleadings.  *See Piper Jaffray Cos., Inc. v. Nat'l Union Fire
Ins. Co.,* 967 F. Supp. 1148, 1152 (D. Minn. 1997).  In addition, because Plaintiff
attached the records as exhibits to his Amended Complaint, they are part and parcel of
that pleading, and the Court may consider them on this basis as well.

[4]  The only other reference to the alleged incident on April 26, 2013 in the medical
records are notes from Plaintiff's visit with non-party Gene Kliber, P.A., on April 26,
2013.  (Am. Compl. Ex. at 5.)  The notes reflect that when Plaintiff fell from his
wheelchair, he was evaluated by a nurse, who found he had "no areas of abrasions on
palms or knees and he denied any injuries at that time."  (*Id.*)  During Kliber's evaluation
of him, Plaintiff had "no swelling or abrasions, just tenderness to these areas and he had a
bag [o]f ice which he was putting on the hip."  (*Id.*)

continued to report his back pain.  (*Id.* at 2-4.)  On July 30, 2013, Dr. Klapmeier noted

the results of Plaintiff's neurological exam, which were normal.  (*Id.* at 4.)  On August

14, 2013, physical therapy was requested for Plaintiff.  (*Id.* at 3.)  On September 10,

2013, Plaintiff was not in any apparent acute distress.  (*Id.* at 7.)  On October 2, 2013,

Plaintiff was able to move both upper extremities well with "almost near normal range of

motion of his left arm" and "normal range of motion of his right arm."  (*Id.* at 2.)  He also

showed "good dorsal movement."  (*Id.*)  Plaintiff, however, indicated pain to "even the

absolute lightest of touches to his midline upper back," and examination of his lower

back showed some tenderness.  (*Id.*)[5]

Plaintiff alleges he also visited Dr. Wichser to address issues with his back, hip,

and headaches.  (Am. Compl. at 8.)  Plaintiff claims that Dr. Wichser disregarded his

pain, telling him to "stop crying an[d] suck it up," and the pain would "go away."  (*Id.*)

None of the medical records attached to the Amended Complaint refers to Dr. Wichser,

however.

In his request for relief, Plaintiff seeks treatment by a back specialist and a pain

specialist, compensation for pain and suffering, pain medicine, and $25,000.  (*Id.* at 5.)

---

[5]  Dr. Klapmeier's notes also refer to ongoing treatment of Plaintiff for hypertension and
potential seizures.  For the hypertension, Plaintiff was taking Catapres, and the medical
staff discussed opportunities for Plaintiff to be more active in his daily living activities.
(*Id.* at 7.)  Because Plaintiff was able to elevate his blood pressure artificially, his daily
blood pressure checks were discontinued on July 30, 2013, and instead, required only
before clinic visits.  (*Id.* at 3-4.)  For the potential seizures, Plaintiff was taking Dilantin
and Neurontin.  (*Id.* at 7.)  The dosage of Dilantin was reduced at the September 10,
2013, appointment due to significant potential side effects for Plaintiff.  (*Id.*)  This
treatment does not appear to be at issue in Plaintiff's Complaint.

### III.   ANALYSIS

#### A.   Roy and Drevlow's Motion for Judgment on the Pleadings

##### 1.   Legal Standard

Federal Rule of Civil Procedure 12(c) provides that a motion for judgment on the pleadings is appropriate after the pleadings are closed.  Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings will be granted "only where the moving party has clearly established that no material issue of fact remains and the moving party is entitled to judgment as a matter of law."  *Waldron v. Boeing Co.*, 388 F.3d 591, 593 (8th Cir. 2004).

A motion for judgment on the pleadings is evaluated under the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim.  *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009).  Well-pled facts, not legal theories or conclusions, determine the adequacy of the complaint.  *Id.*  The facts alleged in the complaint "must be enough to raise a right to relief above the speculative level."  *Id.*

##### 2.   Failure to State a Claim

Defendants Roy and Drevlow argue that dismissal is proper because Plaintiff has pled only official-capacity claims, for which he cannot maintain a § 1983 cause of action. They also argue that even if Plaintiff had pled individual-capacity claims, he has not stated a federal claim for relief, and the Court lacks subject matter jurisdiction over any state law claims.  Plaintiff responds that the prison's conditions, deliberate indifference, and failure to provide care amount to violations of the Eighth Amendment.

Claims under 42 U.S.C. § 1983 can be made against a defendant in either a personal or official capacity.  "Personal-capacity suits seek to impose personal liability

upon a governmental official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). By contrast, official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Id.* at 165-66.

If a complaint does not identify the capacity in which he is suing the defendant, courts interpret the complaint as including only official-capacity claims. *Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007). The Amended Complaint is silent about the capacity in which Plaintiff is suing Defendants. Thus, the Court interprets the Amended Complaint as alleging only official-capacity claims.

Official-capacity suits are subject to the restrictions of the Eleventh Amendment, under which states are immune from suits brought against them in federal court, unless immunity has been waived or overridden by Congress. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). The Eleventh Amendment is fully effective in § 1983 actions. *Id.* It is well-settled that a state and its officials acting in their official capacities are not "persons" against whom a § 1983 claim for money damages may be asserted. *Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997). On the other hand, state officials acting in their official capacities are § 1983 "persons" when sued for prospective injunctive relief. *Id.*

Plaintiff seeks monetary and prospective injunctive relief. Monetarily, Plaintiff seeks "compensation for pain and suffering," which may include or be in addition to the requested $25,000. (Am. Compl. at 5.) These claims are barred by the principles stated above. By contrast, Plaintiff can sue Roy and Drevlow in their official capacities for

7

prospective injunctive relief, which includes seeing back and pain specialists, and to "be put on pain medication soon." (*Id.*)

Plaintiff, however, has not pled any facts that warrant relief on his official-capacity claims for prospective injunctive relief. To state such a claim, Plaintiff must show that his federal constitutional rights were violated because of some particular state policy or custom. *See Grayson v. Ross*, 454 F.3d 802, 810-11 (8th Cir. 2006) ("Official-capacity liability under 42 U.S.C. § 1983 occurs only when a constitutional injury is caused by 'a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'"). No allegations in the Amended Complaint suggest any violation of Plaintiff's constitutional rights by Roy or Drevlow's execution of a state policy or custom. Thus, the Court recommends dismissing Plaintiff's claims against Roy and Drevlow.

## B.    Remaining Defendants' Motions to Dismiss

Defendants Klapmeier, Staber, and Wichser argue that Plaintiff fails to state a claim under the Eighth Amendment or for medical malpractice.

### 1.    Legal Standard

When evaluating a motion to dismiss under Rule 12(b)(6), the Court assumes the facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the plaintiff. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). The Court, however, need not accept as true wholly conclusory allegations, *Hanten v. School District of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions that the plaintiff draws from the facts pled, *Westcott v. City of Omaha*, 901 F.2d

1486, 1488 (8th Cir. 1990).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In short, this standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

### 2.   Eighth Amendment

"The Eighth Amendment standard for conditions of confinement is whether the defendants acted with deliberate indifference." *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011). A claim of deliberate indifference requires Plaintiff to show that "he suffered from one or more objectively serious medical needs, and that prison officials actually knew of but deliberately disregarded those needs." *Hartsfield v. Colburn*, 491 F.3d 394, 396-97 (8th Cir. 2007). As explained below, Plaintiff fails to state such a claim against Dr. Klapmeier, Dr. Staber, and Dr. Wichser.

Plaintiff alleges that Dr. Klapmeier handled Plaintiff's treatment plan, and that Plaintiff is "still suffering with no pain medicine or orders to see a specialist." (Am. Compl. at 5.) The medical records show that Dr. Klapmeier examined Plaintiff on May 2, 2013; July 30, 2013; August 14, 2013; September 10, 2013; and October 2, 2013; and

Plaintiff received treatment for his concerns.  (Am. Compl. Ex. [Doc. No. 7-1].)  Dr.

Klapmeier provided Plaintiff with multiple physical examinations, physical therapy, a

regimen of ice and warm compresses, and medication for his pain, hypertension, and

potential seizures.  The Eighth Amendment does not prevent prison doctors from

exercising their independent medical judgment, and prisoners lack a constitutional right

to any particular type of treatment.  *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996).  In

other words, "[p]rison officials do not violate the Eighth Amendment when, in the

exercise of their professional judgment, they refuse to implement a prisoner's requested

course of treatment."  *Id.*  Accordingly, the Court concludes that Dr. Klapmeier's

discontinuation of prescription pain medication and decision not to refer Plaintiff to a

specialist does not amount to deliberate indifference.

With respect to Dr. Staber, the only allegation is that she "refuse[d] to treat my

[Plaintiff's] injuries."  (Am. Compl. at 5.)  Plaintiff does not allege that Dr. Staber

actually knew of but deliberately disregarded any objectively serious medical needs.  No

medical records attached to the Amended Complaint involve or refer to Dr. Staber.  Thus,

Plaintiff fails to state an actionable Eighth Amendment claim against Dr. Staber.

Likewise, Plaintiff fails to state a claim against Dr. Wichser.  It is alleged that

Plaintiff saw Dr. Wichser for his "back, hip and headaches."  (*Id.* at 8.)  It is also alleged

that Dr. Wichser disregarded Plaintiff's "pain issues," gave him "something for

headache," and told Plaintiff to "stop crying an[d] suck it up the pain will go away."  (*Id.*

at 5, 8.)  No medical records attached to the Amended Complaint involve or refer to Dr.

Wichser.  Without more, Plaintiff has not shown that Dr. Wichser deliberately ignored an

objectively serious medical need that was brought to his attention.

In short, Plaintiff has not stated a viable constitutional claim of deliberate indifference under the Eighth Amendment against Dr. Klapmeier, Dr. Staber, or Dr. Wichser.  The Court therefore recommends dismissing these claims.

### 3.     Medical Malpractice

To the extent Plaintiff intended to assert a medical malpractice claim under state law, such a claim fails, too.  All parties in this case are Minnesota residents, therefore precluding subject matter jurisdiction on the basis of diversity.  *See* 28 U.S.C. § 1332.  And, the Court should not exercise supplemental jurisdiction over any state malpractice claim in light of its recommendation to dismiss all federal claims.  *See* 28 U.S.C. § 1367(c)(3) (noting that the court may decline to exercise supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction").  There is no federal subject matter jurisdiction over any state malpractice claim, thus warranting dismissal.

### C.     Plaintiff's Motion for Legal Assistance

Plaintiff moves for legal assistance, asserting that he lacks a high school diploma or G.E.D., and is not educated in the law.  (Mot. Legal Assistance [Doc. No. 57].)  Litigants do not have a constitutional or statutory right to appointed counsel in a civil case.  *Nelson v. Redfield Lithograph Printing*, 728 F.2d 1003, 1004 (8th Cir. 1984).  Rather, the appointment of counsel is within the trial court's discretion.  *Chambers v. Pennycook*, 641 F.3d 898, 909 (8th Cir. 2011).  In determining whether to appoint counsel, a district court "is to decide whether the plaintiff and the court will substantially benefit from the appointment of counsel, considering the factual and legal complexity of

the case, the plaintiff's ability to investigate the facts, the existence of conflicting testimony, and the ability of the plaintiff to present his claim." *Plummer v. Grimes*, 87 F.3d 1032, 1033 (8th Cir. 1996).

The Court finds that neither the facts nor the legal issues raised in the Amended Complaint are so complex as to warrant the appointment of counsel. Plaintiff has shown a threshold ability to present his claims and communicate with the Court. The Court does not believe that appointing counsel would substantially benefit the Court or Plaintiff. Thus, the Court recommends denying Plaintiff's motion for legal assistance.

### D.    Plaintiff's Motion for Subpoena

Plaintiff moved for a subpoena regarding "video evidence, medical record with limited access, witnesses – Rodney Gilliam, expert testimony after a thorough examination." (Mot. Subpoena [Doc. No. 58].) Defendants argue that Plaintiff's motion is vague and premature because Plaintiff has not served any Defendant with a discovery request.

Because the Court recommends dismissing all of Plaintiff's claims, Plaintiff's motion for subpoena is therefore moot. Alternatively, the motion should be denied on the merits because Plaintiff has not provided an adequate basis for requiring production of the requested items, documents, and witnesses.

## IV.    RECOMMENDATION

Based on the foregoing and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendants Commissioner Tom Roy and Officer Nate Drevlow's Motion for

12

Judgment on the Pleadings [Doc. No. 17] be **GRANTED**;

2. Defendants Dr. Steven Klapmeier and Dr. Lisa Staber's Motion to Dismiss [Doc. No. 36] be **GRANTED**;

3. Defendant Dr. James Wichser's Motion to Dismiss [Doc. No. 40] be **GRANTED**;

4. Plaintiff's Motion for Legal Assistance [Doc. No. 57] be **DENIED**;

5. Plaintiff's Motion for Subpoena [Doc. No. 58] be **DENIED**; and

6. This case be **DISMISSED WITH PREJUDICE**

Dated:  November 10, 2014                    *s/ Hildy Bowbeer*
                                             HILDY BOWBEER
                                             United States Magistrate Judge


**NOTICE**

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **November 28, 2014**, a writing that specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within fourteen days after service thereof. A judge shall make a *de novo* determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.