**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Courtney Bernard Clark,<br><br>    Plaintiff,<br><br>v.<br><br>Officer Nate Drevlow,<br><br>    Defendant. | Case No. 13-cv-2849 (SRN/HB)<br><br><br>**REPORT AND RECOMMENDATION** |

Courtney Bernard Clark, Minnesota Correctional Facility-Moose Lake, 1000 Lake Shore Drive, Moose Lake, MN 55767, pro se

Margaret E. Jacot, Minnesota Attorney General's Office, 445 Minnesota Street, Suite 900, Saint Paul, MN 55101, for Officer Nate Drevlow

HILDY BOWBEER, United States Magistrate Judge

  This matter is before the Court on Defendant Drevlow's Motion for Summary Judgment [Doc. No. 160]. The motion was referred to the undersigned United States Magistrate Judge for the issuance of a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). The Court held a hearing on this motion on November 1, 2016. For the reasons set forth below, the Court recommends granting Defendant Drevlow's motion for summary judgment.

**I.     Background**

Plaintiff was an inmate at the Minnesota Correctional Facility in Faribault, Minnesota ("Faribault Facility").[1]  (Am. Compl. at 3 [Doc. No. 7].)  Defendant Nate Drevlow is a corrections officer at the Faribault Facility and an employee of the Minnesota Department of Corrections.  (*Id.* at 4; Answer ¶ 4 [Doc. No. 13].)

Plaintiff filed a Complaint for Violation of Civil Rights under 42 U.S.C. § 1983 on October 24, 2013, based on an April 26, 2013, incident in which Plaintiff allegedly suffered injuries after falling out of his wheelchair.  (Am. Compl. at 4-5.)  Defendants Commissioner Tom Roy and Officer Nate Drevlow filed a Motion for Judgment on the Pleadings [Doc. No. 17].  On March 13, 2015, District Judge Michael J. Davis adopted this Court's Report and Recommendation in part and modified it in part [Doc. No. 82].  That order denied Plaintiff's request for injunctive relief, and dismissed all of Plaintiff's claims except his § 1983 Eighth Amendment claim against Drevlow in his individual capacity arising out of the April 26, 2013, incident.  On March 24, 2015, Plaintiff filed an appeal to the United States Court of Appeals for the Eighth Circuit [Doc. No. 91].  On September 30, 2015, the Eighth Circuit summarily affirmed the denial of injunctive relief and dismissed the remainder of the appeal for lack of jurisdiction [Doc. No. 117].

The Amended Complaint alleges the following facts.  On April 26, 2013, Plaintiff was scheduled to leave the Faribault Facility to attend an off-site neurology appointment.

---

[1]  The Court understands that Plaintiff is now located at the Minnesota Correctional Facility in Moose Lake, Minnesota.

(Am. Compl. at 4, 7.)[2] Drevlow arrived to transport Plaintiff across the Faribault Facility grounds in a wheelchair. (*Id.*) Plaintiff claims that he warned Drevlow about potholes in their path, but they nonetheless hit one and Plaintiff fell from his wheelchair. (*Id.* at 7.) Medical assistance was called, and staff arrived. (*Id.*) After consulting with the medical staff, Plaintiff attended his off-site appointment. (*Id.*) Upon returning to the Faribault Facility, Plaintiff reported the pain and discomfort he was experiencing, and in turn received "a plastic bag supply for ice for a year." (*Id.*)

In his Objection to the Report and Recommendation, Plaintiff additionally asserted that Drevlow intentionally pushed him into the biggest pothole with an evil intent, ill will, reckless, and callous indifference. (Obj. to R. & R. at 6 [Doc. No. 79].) He further asserted that Drevlow deliberately left him sprawled on the ground. (*Id.* at 7.)

In his request for relief, Plaintiff seeks treatment by a back specialist and a pain specialist, pain medication, compensation for pain and suffering, and $25,000. (Am. Compl. at 5.)

Drevlow submitted affidavits in support of his motion for summary judgment that stated the following facts. In April 2013, Plaintiff was housed in the Faribault Prison's Linden Unit. (Drevlow Aff. ¶ 3 [Doc. No. 164].) He used a manually operated wheelchair to move around within his unit, but when he left his unit, he required an assistant to push him in his wheelchair. (Ohnstad Aff. ¶ 4 [Doc. No. 162].) Depending on the time of day and availability, trained inmate aids would push inmates in manual

---

[2] Plaintiff did not number his paragraphs, so the Court cites to ECF page numbers.

3

wheelchairs. (Ohnstad Aff. ¶ 5.) If an inmate aid was not available, a DOC staff member would assist inmates using manual wheelchairs. (Ohnstad Aff. ¶ 5.)

On April 26, 2013, Plaintiff was scheduled to leave the prison in the morning for an off-site medical appointment. (Drevlow Aff. ¶ 3.) Plaintiff's departure time was scheduled in the early morning before inmates were released from their cells, so an inmate aid was not available to push Plaintiff's wheelchair. (Drevlow Aff. ¶ 3; Ohnstad Aff. ¶ 5.) Drevlow was working the overnight shift and was part of a squad of officers available to respond to emergencies or other situations. (Drevlow Aff. ¶ 2.) He was assigned to escort Plaintiff from the Linden Unit to the Intake Unit, through which all inmates must pass to enter or leave the prison. (Drevlow Aff. ¶ 3.) Drevlow went to the Linden Unit and waited at the security desk for Plaintiff to arrive. (Drevlow Aff. ¶ 4.) Drevlow does not recall what he specifically said to Plaintiff when he arrived, but states that it is his practice to encourage an offender to hurry so that the offender does not dawdle and miss his appointment. (Drevlow Aff. ¶ 4.) Drevlow had not had any significant interaction with Plaintiff prior to the day of the accident. (Drevlow Aff. ¶ 9.)

Drevlow pushed Plaintiff's wheelchair out of the Linden Unit, down the sidewalk, and onto the road outside the building. (Drevlow Aff. ¶ 5.) The unit log, which is maintained by the officers working in the Linden Unit, establishes that they left the unit at approximately 5:40 a.m. (Drevlow Aff. ¶ 13; *id.* Ex. B [Doc. No 164-1].) Less than a minute after Drevlow and Plaintiff entered the roadway, Plaintiff's wheelchair stopped suddenly. (Drevlow Aff. ¶ 5; *id.* Ex. A [Doc. No. 164-1].) Plaintiff had been sitting on a large number of pillows, and the sudden stop caused Plaintiff to fall forward out of the

4

chair. (Drevlow Aff. ¶ 5.) Drevlow attempted to catch Plaintiff before he fell out of the wheelchair, but was unable to do so. (Drevlow Aff. ¶ 5.) Drevlow observed that the wheelchair had stopped on a softball-sized pothole by the left front tire. (Drevlow Aff. ¶ 5.) Drevlow states he did not see the pothole before the incident, and that he could not see over Plaintiff in any event because he (Drevlow) is shorter and Plaintiff was sitting atop pillows. (Drevlow Aff. ¶ 5.) Drevlow concedes he knew the road was "pockmarked, as that commonly occurs to paved roads in Minnesota in the spring," but he "was not aware of any large potholes and there were no signs posted warning of any specific potholes." (Drevlow Aff. ¶ 12.) Drevlow asserts that Plaintiff did not tell him to watch out for potholes. (Drevlow Aff. ¶ 12.)

Drevlow asked Plaintiff if he was okay, and called the squad sergeant to help him lift Plaintiff back into the wheelchair. (Drevlow Aff. ¶ 6.) Sergeant Ryan Hansen arrived almost immediately and activated the prison's incident command system ("ICS"). (Drevlow Aff. ¶ 6.) The official time record indicates that ICS was called at 5:40 a.m. (Drevlow Aff. Ex. A.) A nurse, Jason Math, arrived at 5:43 a.m. and assessed Plaintiff for injuries. (Drevlow Aff. ¶ 7; *id.* Ex. A.) Math states Plaintiff denied that he had any injuries and repeatedly stated that he was fine and wished to go to his off-site appointment. (Math Aff. ¶ 2 [Doc. No. 163].) Math observed that Plaintiff had no open abrasions on his hands or knees, and there were no visible injuries. (Math Aff. ¶ 2.) Officers then assisted Plaintiff back into his wheelchair. (Drevlow Aff. ¶ 7.) The ICS record indicates the ICS was cleared at 5:44 a.m. "per Health services." (Drevlow Aff. Ex. A.) Drevlow then finished escorting Plaintiff to the Intake Unit and left him with the

5

officer on duty there. (Drevlow Aff. ¶ 7.) Drevlow does not recall any further interactions with Plaintiff after that date. (Drevlow Aff. ¶ 7.)

Plaintiff went to his off-site neurology appointment. The doctor's notes from that appointment make no mention of Plaintiff reporting the fall. (Ohnstad Aff. Ex. D, at 1-2.) Plaintiff returned to the prison and was examined by another nurse. (Ohnstad Aff. ¶ 7; *id.* Ex. A at 1.) At that time, Plaintiff reported pain in his legs, hips, back, and he was given ice to put on the sore areas. (Ohnstad Aff. ¶ 7; *id.* Ex. B.) Plaintiff was also seen by a physician's assistant, whose report notes Plaintiff reported tenderness in his knee and hip, but denied any swelling or abrasions. (Ohnstad Aff. ¶ 8; *id.* Ex. C at 1.) A few days later, an on-site doctor diagnosed Plaintiff with muscle strain, recommended that he continue to use ice, and prescribed pain medication. (Ohnstad Aff. ¶ 8; *id.* Ex. C at 1.) Plaintiff also received a hip x-ray, which was normal. (Ohnstad Aff. ¶ 8; *id.* Ex. C at 5.)

Darryl Stephens is the physical plant director for the Faribault Facility. (Stephens Aff. ¶ 1 [Doc. No. 166].) He states that no work orders had been submitted during 2013 for potholes on the road where Plaintiff fell from his wheelchair during 2013. (Stephens Aff. ¶ 7.)

Plaintiff submitted no sworn affidavits in opposition to Defendant's motion, but he lays out his own account of the events of April 26, 2013, in his responsive memorandum.[3] Contrary to Drevlow's statement that there was no inmate aid available

---

[3] Drevlow filed his motion for summary judgment on June 28, 2016. Plaintiff filed his response in opposition on July 8, 2016 [Doc. No. 175]. Drevlow filed no reply. On

that morning, Plaintiff states he was told an inmate aid would be available to take him to his appointment, and that an inmate aid was actually available and ready to assist Plaintiff when Drevlow came into the unit and asked what was taking so long. (Resp. Opp'n Summ. J. at 1-2 [Doc. No. 175].) Plaintiff states Drevlow made the inmate aid return to his cell. (*Id.* at 2.)

Plaintiff states there was a safer way from the Linden Unit to the Intake Unit (*id.*), but does not say in his responsive papers or in his interrogatory responses that he informed Drevlow of this or discussed with Drevlow the route they would take. Plaintiff claims he did warn Drevlow of "huge potholes," and that despite that warning, Drevlow "speeded up." (*Id.*) He also averred in his responses to Defendant's interrogatories that "Defendant Officer Nate Drevlow works patrol so he knows the grounds well." (Resp. to Interrogs. at 5 [Doc. No. 146-2].) He also stated that "everyone that lived in Linden Unit at the time saw how bad the streets was at the time of this crime." (*Id.* at 5-6.) As for Drevlow's motivation, Plaintiff claims that Drevlow's "first encounter with Plaintiff Clark was 4-26-13 but the word was alread[y] out that Plaintiff Clark was reporting the wrong doing of prisoners to different organizations and the media," and that the "automatic hatred towards Plaintiff Clark wasn't a surprise. So when Defendant Officer

---

September 29, 2016, Plaintiff filed a motion for an extension of time to respond to Drevlow's summary judgment motion [Doc. No. 186]. The Court denied this motion, noting that Plaintiff had already filed his response, and briefing was complete [Doc. No. 188]. Plaintiff nevertheless filed another response in opposition to the motion for summary judgment on October 17, 2016 [Doc. No. 189]. In an abundance of caution, the Court has considered this unauthorized additional response, but notes that it does not set forth new facts that add materially to his original response to Defendant's motion.

Nate Drevlow express his feelings Clark maintain control because the end resort would be segregation." (Resp. Opp'n Summ. J. at 4.)

Plaintiff urges the Court to disregard the affidavits of Darryl Stephens and Jody Ohnstad, the health services administrator for the Faribault Facility. He maintains they are retaliating against him because of his reports to the nursing board complaining of unauthorized release of medical records, and his reports to the physical therapy board complaining of failure to provide him with medical supplies. (*Id.* at 2-3.)[4]

Finally, Plaintiff insists in his responsive papers that video evidence exists at the prison that would support nearly every one of his statements about how the accident occurred. Plaintiff filed a motion to compel the production of video evidence on April 28, 2016 [Doc. No. 130]. The Court denied that motion because Plaintiff never served his discovery request on Defendant, and the time period for discovery had ended (Order, May 10, 2016 [Doc. No. 135]), under the Pretrial Scheduling Order [Doc. Nos. 121, 123]. In any event, Defendant submitted an affidavit from Karen Sorenson, the associate warden of administration for the Faribault Facility, stating that prison staff members had searched for a video recording of the April 26, 2013, incident at the time the case commenced, and again before Defendant filed his motion for summary judgment, but were unable to locate any video recording of the incident. (Sorenson Aff. ¶¶ 1-2 [Doc. No. 167].)

---

[4] During the hearing, it became apparent that Plaintiff mistakenly believed Darryl Stephens to be the physical therapist at the Faribault Facility. Accordingly, his allegation that Stephens's affidavit was influenced by Plaintiff's complaints to the physical therapy board appears to be misdirected.

## II. Applicable Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute over a fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* In considering a motion for summary judgment, the court views the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996).

The party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 256. "Like any other civil litigant," a pro se plaintiff must respond to a defendant's motion for summary judgment "with specific factual support for his claims" sufficient to sustain a jury verdict in his favor. *Beck v. Skon*, 253 F.3d 330, 333 (8th Cir. 2001); *see Anderson*, 477 U.S. at 249-52.

Federal Rule of Civil Procedure 56(c)(4) requires "[a]n affidavit or declaration used to support or oppose a motion [to] be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." "Although Rule 56, as amended in 2010, no longer

9

requires a formal affidavit, an unsworn declaration or statement substituted for a sworn affidavit must still meet important statutory requirements." *Banks v. John Deere & Co.*, 829 F.3d 661, 668 (8th Cir. 2016).  Under 28 U.S.C. § 1746, an unsworn declaration or statement must be written, signed, dated, and certified as true and correct "under penalty of perjury."  This rule equally applies to pro se parties.  Pro se parties "cannot withstand summary judgment by relying on unsworn allegations, but must set forth by affidavit or other evidence specific facts showing a genuine issue for trial."  *Grant v. Quiram*, No. 14-cv-4589 (WMW/BRT), 2016 WL 4196823, at *5 (D. Minn. June 23, 2016), *R. & R. adopted sub nom. Grant v. Quirram*, 2016 WL 4186937 (D. Minn. Aug. 8, 2016) (citations omitted).

     Plaintiff did not file either sworn affidavits or statements that were certified as true and correct under penalty of perjury in connection with this motion.  Furthermore, even though he filed his interrogatory answers with the Court, he did not verify them.  (Resp. to Interrogs. [Doc. No. 146-2].)[5]  Accordingly, the facts alleged by Plaintiff in his responsive papers and interrogatory answers are not the kind of material that may be relied upon to create a fact dispute for purposes of withstanding a motion for summary judgment.  On the other hand, Defendant did not challenge Plaintiff's opposition to his motion on that basis.  Moreover, as discussed below, even if the statements contained in Plaintiff's responsive papers and his interrogatory answers had been sworn or declared under penalty of perjury, they would not be sufficient to create a genuine issue of

---

[5] Federal Rule of Civil Procedure 33(b) requires that answers to interrogatories be made under oath.  Plaintiff signed his interrogatory answers, but did not indicate whether he made his answers under oath, and his answers were not notarized.

material fact, and would not alter this Court's recommendation that summary judgment be granted in favor of Drevlow.

## III. Discussion

### A. Eighth Amendment Claim

The only remaining claim in this case is Plaintiff's Eighth Amendment claim against Drevlow in his individual capacity. "The Eighth Amendment 'prohibits the infliction of cruel and unusual punishments on those convicted of crimes.'" *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009) (quoting *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991)). With respect to conditions of confinement, the question is whether the prison official acted with "deliberate indifference." *Id.* (citing *Wilson*, 501 U.S. at 303). The deliberate indifference standard "has both an objective and a subjective component." *Nelson*, 583 F.3d at 529.

To meet the objective component, Plaintiff must show there was a substantial risk of serious harm to his safety. *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011). For purposes of this motion, Drevlow assumes Plaintiff would be able to establish the objective component. (Mem. in Supp. at 7 [Doc. No. 161].) The issue before the Court, therefore, is whether Plaintiff can meet the subjective component.

To do so, Plaintiff must show "the officer had knowledge of the substantial risk to the inmate's safety but nevertheless disregarded it." *Reynolds*, 636 F.3d at 979 (citation omitted). "[D]eliberate indifference includes something more than negligence but less than actual intent to harm; it requires proof of a reckless disregard of the known risk." *Id.* (quoting *Crow v. Montgomery*, 403 F.3d 598, 602 (8th Cir. 2005)).

11

Plaintiff argues he can establish that Drevlow exhibited deliberate indifference because: (1) Plaintiff warned Drevlow about potholes on the road; (2) Drevlow was aware of potholes on the road from his job duties; (3) Drevlow was aware of an alternative safer route; (4) Drevlow had pre-existing animosity toward Plaintiff based on Plaintiff's whistleblowing activities; (5) Drevlow said things to Plaintiff while Drevlow was pushing Plaintiff's wheelchair that made Plaintiff feel as if Drevlow was acting with ill will; and (6) Drevlow left Plaintiff sprawled on the ground for an unreasonable amount of time. But even considering Plaintiff's interrogatory responses and his account of the incident and interactions with Defendant contained in his responsive memoranda and interrogatory answers as though they had been made under oath or under penalty of perjury, Plaintiff has not shown there is a genuine dispute as to any material fact that would support a finding that Drevlow acted with subjective deliberate indifference to Plaintiff's safety.

First, Plaintiff argues Drevlow exhibited deliberate indifference because even though Plaintiff warned Drevlow that there were potholes on the road, Drevlow sped up when pushing Plaintiff in his wheelchair. While Drevlow acknowledged that he knew the road was "pockmarked," there is no evidence that he was warned or otherwise knew there were potholes immediately ahead, or that they were of such a size or depth that they would not merely jostle Plaintiff but instead cause him to fall out of his wheelchair and incur serious injury. There is no evidence, other than Plaintiff's speculation, that Drevlow "sped up" for any reason other than because of his concern that Plaintiff would be late for his appointment. There is certainly no evidence that Drevlow saw the specific

12

pothole and deliberately steered the chair into it. On the contrary, the only evidence as to what Drevlow could see was from his affidavit, stating that he could not see over Plaintiff in the chair. While his pace in view of the lack of clear sight lines may have been negligent, nothing in the record establishes the subjective wantonness or recklessness required for Plaintiff's case to survive summary judgment.

Plaintiff's claim that Drevlow knew of the potholes from his job duties does not add material support to his position. Even if the Court accepts as true (and well-founded) Plaintiff's statement in his interrogatory responses that "Defendant Officer Nate Drevlow works patrol so he knows the grounds well" (Resp. to Interrogs. at 5 [Doc. No. 146-2]), at most it establishes that Drevlow "should have known" there were potholes on the road. Deliberate indifference requires more than evidence that an officer should know of the dangerous conditions. *Choate v. Lockhart*, 7 F.3d 1370, 1374 (8th Cir. 1993) (reversing the district court where the lower court found only that the defendants "knew or should have known" of the plaintiff's physical limitations preventing him from working prison construction duty).

Plaintiff next argues that Drevlow was aware of an alternative safer route to the Intake Unit. But there is no evidence even specifying that alternate path, let alone establishing that it was actually safer, that Drevlow knew it was safer, that had he chosen it the incident would not have occurred, or that he had no legitimate countervailing reason to go the way he did rather than take the allegedly "safer" route. Furthermore, the fact that the road upon which the incident occurred was subsequently repaved (Stephens Aff. ¶ 7 [Doc. No. 166]) does not show that Drevlow deliberately disregarded a

13

substantial risk to Plaintiff's safety by choosing that route at the time.  Not only is there no reason to believe Drevlow knew prior to the incident that the road was in a dangerous condition, but under Federal Rule of Evidence 407, subsequent remedial measures that arguably would have made an earlier injury less likely to occur are not admissible to show culpable conduct.

     Next, Plaintiff argues Drevlow held a pre-existing animosity toward him because of Plaintiff's whistleblowing activities.  Plaintiff states that Drevlow was aware that Plaintiff was a whistleblower and that Plaintiff had reported prison problems to the media and organizations.  But even treating the statements in Plaintiff's responsive papers and interrogatory answers as though they had been sworn declarations, Plaintiff has adduced no competent evidence that Drevlow was aware of any alleged whistleblowing activities – Plaintiff's personal conviction that he must have been aware is not sufficient. Plaintiff's interrogatory responses that Drevlow exhibited this ill will by "the things he said," including "what the f___'s taking you so long you are holding up transport," and "get the f___ up" after Plaintiff fell from his wheelchair, even if assumed to be true, are similarly insufficient.  (Resp. to Interrogs. at 6-7.)  These brief statements are not sufficient to create a factual dispute over whether Drevlow held such ill will against Plaintiff before the accident that he was motivated to cause Plaintiff harm.[6]

---

[6] Plaintiff attempted at the hearing on the motion to supplement the evidence in support of his position by referring to additional statements Drevlow allegedly made on the day of the incident in which Drevlow purportedly mentioned Plaintiff's complaints about the medical staff.  Any such references (which were not under oath) must be disregarded, however, because Plaintiff did not raise them in his interrogatory answers or in his responsive papers.  The oral argument is too late to raise purported new evidence in an

Finally, Plaintiff argues Drevlow left him on the ground after he fell from his wheelchair. However, the ICS records show the entire incident was over and Plaintiff back in his wheelchair in a matter of a few minutes. Plaintiff does not dispute Drevlow's statement that he immediately called his sergeant, Ryan Hanson for assistance. That Drevlow, who was smaller than Plaintiff, decided to call someone to assist him in getting Plaintiff back in his wheelchair rather than attempt to lift Plaintiff himself does not suggest malicious intent. In addition, a nurse responded and examined Plaintiff before he was moved. There is no evidence before the Court upon which a reasonable factfinder could conclude Drevlow's decision to leave Plaintiff on the ground until help arrived was an indication of malice or deliberate indifference to Plaintiff's safety.

In sum, Plaintiff has provided no admissible evidence that Drevlow acted with subjective deliberate indifference to Plaintiff's safety while he pushed Plaintiff's wheelchair on the morning of April 26, 2013. For this reason, the Court recommends granting Drevlow's motion for summary judgment.

### B. Qualified Immunity

"Qualified immunity may protect government officials from liability under 42 U.S.C. § 1983, but not if their conduct violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Nelson*, 583

---

effort to avoid summary judgment. *See, e.g.*, *Williams v. Ehlenz*, No. 02-978 (JRT/JSM), 2004 U.S. Dist. LEXIS 28954, at *22 (D. Minn. Aug. 12, 2004) ([P]laintiff's response to defendants' motion for summary judgment was the first notice defendants received of these facts or claims. The time to have apprised defendants of these facts was prior to the close of discovery, and not for the first time, in response to defendant's motion for summary judgment.").

F.3d at 527 (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).  In analyzing a claim of qualified immunity, the Court considers: (1) whether the facts viewed in the light most favorable to Plaintiff support a conclusion that Defendant violated a constitutional right, and (2) whether the constitutional right at stake was "clearly established" at the time of the alleged violation "such that a reasonable official would have known that his or her actions were unlawful."  *Id.* at 528 (citing *Pearson v. Callahan*, 555 U.S. 223, 232-33 (2009)).  The Court has discretion which prong "should be addressed first in light of the circumstances in the particular case at hand."  *Pearson*, 555 U.S. at 236.  When a court concludes that a constitutional right was not violated, it need not address whether the right was clearly established at the time of the alleged violation.  *Fields v. Abbott*, 652 F.3d 886, 894 (8th Cir. 2011).

Drevlow summarily argues qualified immunity applies because he has not violated any constitutional right, and even if he did, the right was not clearly established at the time of the April 26, 2013, incident.

Plaintiff's right to "safe and humane conditions of confinement" was clearly established at the time of the April 26, 2013, incident.  *Brown v. Fortner*, 518 F.3d 552, 558 (8th Cir. 2008).  However, as explained above, Plaintiff has not shown there is a dispute of material fact that Drevlow acted with subjective deliberate disregard for Plaintiff's rights under the Eighth Amendment.  The Court therefore recommends granting Drevlow's motion for summary judgment based on qualified immunity.

IV. **Recommendation**

Based on all the files, records, and proceedings herein, **IT IS HEREBY**

**RECOMMENDED** that

1. Drevlow's Motion for Summary Judgment [Doc. No. 160] be granted in that Plaintiff's Eighth Amendment claim against Drevlow in his individual capacity be **DISMISSED WITHOUT PREJUDICE**; and

2. **JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: November 7, 2016

    s/ *Hildy Bowbeer*
HILDY BOWBEER
United States Magistrate Judge

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.